Case number 19-1091-RL, Public Service Electric and Gas Company, Petitioner v. Federal Energy Regulatory Commission. Mr. Longstreth for the Petitioner, Ms. Rylander for the Respondent. Thank you, counsel. Mr. Longstreth, please proceed when you're ready. Thank you very much and may it please the court, your honors. John Longstreth for the Petitioner, Public Service Electric and Gas Company and PPL Electric Utilities Corporation. Two things stand out about this case. First, the commission repeatedly insists that this is essentially a one-off case. Its briefs note that the commission's findings were expressly limited to stability-related transmission upgrade projects, currently a category of one, and makes repeated references to the case as unique or highly unusual. Now, it's conceptually permissible to have an agency one-off decision, but it does raise the suspicion that the decision is temporizing rather than fully reasoned and that ordinary process hasn't been followed. Here is another aspect critical that the commission was dealing with the same record in 2018 that it had in 2016. That's correct, and as a matter of fact, I was going to lead to the confirmation of the suspicion here that the commission did a 180-degree change in position in the orders on review based on the same record and barely- Why is that a problem? You said it's going to reconsider. Yeah, why is that a problem? We do that all the time. I mean, we hate when we make a mistake, but that's exactly why you have re-hearings. We've laughed when I read this. I've gotten burned as have my colleagues who make mistakes. You look at a record, and you swear you got it right. You publish it, and you say, then you get a petition re-hearing. You say, oh, my God, we really screwed that one up, and you redo it on the same record. The one thing I want to make clear here is what you're suggesting doesn't, at least to this judge, suggest anything that's horrible. It suggests exactly what we ought to be doing. This is what we do. No, I appreciate- I appreciate your honor that the purpose of re-hearing is that sometimes FERC does change its mind. We all do. All judges do. I think the one thing, though, that is clear here is not just that they changed their mind, but they changed their mind without any reference to the previous decision they had made. It's one thing to change your mind and say, look, as you're saying, your honor, yes, I got it wrong the first time. Here's what I did wrong. Here's why I've changed my mind. Here's why what I decided before is no longer right. That's exactly what they did not do here. If you look at- Okay. When the agency says, taking the same record, we're going to reconsider our decision. Isn't that enough? I understand Supreme Court cases that talk about, well, you have to acknowledge you're changing your position and you have to tell us why, et cetera. My only question is, I understand the nature of those cases, but I don't know that I read them quite the way you do in terms of saying that the agency cannot change its mind unless it goes through this self-flagellation process. Well, I'm certainly not suggesting that the commission needs to do that. Counselor, it's really an unfair characterization. They clearly were explaining what preceded this and what happened here. It's a difference between solution-based for reliability as opposed to stability. Lord knows, I don't sit around dealing with stability and reliability every day, but I got what they got. It was very clear to me that they were making it clear to someone like me who might judge them and say, look, we put it in the wrong box. This is a really unusual case. That's the one thing that seems absolutely clear here is that the they put it in the wrong frame. I don't know how you can doubt that. They made it very clear what happened. They made it very clear why they had to change. I don't think there's any confusion. Well, let me tell you what I think. I understand your point, Your Honor, that there was an explanation as to what they were doing, but what I would- As against what they did. I got it. Now, like I say, I'm not someone who does this every day, but I clearly understood what they were saying about that. They made a mistake with respect to what they did as against to what they are now doing. Well, with respect, Your Honor, I don't think the thing that they didn't do was when they made their first decision, they said there were going to be substantial benefits from this project. I can give you an opinion I've written where that's what I thought the first time, and then we reheard it, and I had to kind of eat crow and say, well, you know, that was wrong. But, Your Honor, I'm sure that you do that as a rational decision maker. That is not what FERC did here. FERC did not say, they never said there are not substantial benefits to these agencies. They never disavowed that finding. So, the finding is- And so, all they need to do to- All they need to do to affirm their decision here is to- Not to affirm. All they need to do to affirm the transmission operator's decision here, and again, we have to back up a little bit. The transmission operators are the ones that propose transmission cost allocations. That's our job as the transmission operator. It's not FERC's job to propose it. It's not the court's job to propose it. It's our job to propose it, and FERC has to affirm that if they find that there are substantial benefits to the project commensurate with the cost. FERC found that in 2016. And they made a mistake. But they didn't say that- They did. They said in this context, it doesn't work. That is what we thought in Order 1000 and applied to most of the cases. We still- They said, we still affirm that. That is correct. But we found out that in this situation where we're talking about for stability is not reliability, it doesn't work. The framing doesn't work. I'm sorry. They didn't- I'm sorry. They did say, yes, we think stability is a different situation. What they did not say is, we found substantial benefits, and now we find there aren't substantial benefits. Where did I get that from? They never said it was wrong. They never said it was wrong. They never even addressed those findings of substantial benefits. That was made in the first decision. All they did in the second decision was say, well, even if the- All they did in the second decision was say, well, we might have something that works better in this case. That with respect to the commission is not the standard. The commission cannot- I think what they were saying is their basic premise of Order 1000 is cost causation. That's the foundation. They were saying that they missed the boat on cost causation the way they initially set it up in this situation. They were wrong. There may be a little bit, maybe tiny bits of benefit here or there. They weren't suggesting there are no benefits. They were saying the cost causation allocation was so far off that in this situation, we are obliged to change it. I don't know how I could have gotten that. Listening to you, I'm wondering now whether I was delusional. You just can't miss what Firk said. You can't miss it. Let me ask you, counsel, because you started out by saying that the agency here proceeded improperly. That's what I need to understand what your concern is. Judge Edwards has outlined why we all understand what it did, but what was improper about what it did? Well, let me put it this way. I certainly don't want to suggest anyone's delusional, but it does appear I have to change somebody's mind here. I'm going to try to do that as as respectfully as I can. How about answering my question? With all due respect, Judge Rogers, it did seem like you were coming from the same place, so I didn't mean to deflect. Here's the situation. The April 16th order comes out. The April 16th of an ex-ante rule is ex-ante. We have the rule in place before the project is proposed so that we don't have all this litigation afterwards and all these lawyers and all these lobbyists and all these public officials coming in and trying to overturn it. That's what ex-ante means. We've got the rule. We've adopted it. We found in 2013 and 2014 it was proper. It applies to these found that there were significant benefits to the project. That takes care of cost causation. If it's correct. What? If it's correct. If it's correct, and if they think it's not correct, what they have to do is come back and say, we said there were significant benefits to the project, but we were wrong. There are not significant benefits to the project. They never said that, and they couldn't have said it. Going to your question, Judge Rogers, it's a procedural thing. How can you say we were wrong in an April 2016 decision if you never refer to that decision or discuss the reason of that decision? Look at the decisional paragraphs in the 2018 and 2019 orders. In the 2018 order, they have a paragraph that's about three lines long saying here's what we decided in 2016. Then we never hear about the 2016 order again. It's not discussed. It's findings aren't discussed. It's findings aren't overturned. They just go on to something else and say, well, we could have done something that was a little better. The test is not. In other words, I need to be clear on your procedural point. When an agency such as FERC announces it is granting reconsideration of its 2016 order, it cannot, in your view, even where it's proceeding on the same record, act as though nothing happened before and come up with what I'll suggest is a new way of looking at the record. Yeah, I think that's correct, and I think the analogy I would use, and I understand the points that you're making, which is when the agency's in the same proceeding, that's a little bit different from looking at prior precedent. I would think of it kind of the way universal camera looks at it, which is that that was a case you had the ALJ made a decision, then the commission made a decision, and the question was how you look at that. The court makes clear, as I think you're suggesting, the agency can change its mind. The agency can have a final decision. That's all fine, but the court does have to take into account, and I think that's what that case said, is they have to take into account that you had an administrative law judge who made findings, and those are in the record, and they have to be dealt with, and that, I think, is the answer to your question, which is sure, they can change their mind. Sure, they can come to a different conclusion, but they can't just ignore the fact that in April 2016, they came to the opposite conclusion, and they made findings in this very case that there were substantial benefits from this project, and then again, that ties into the air. So they made a specific finding. First of all, you're ignoring the fact that this all starts pursuant to a petition for rehearing, which states the alleged mistake. That's the context. That's why we're not confused. There was also a dissent in the original opinion, which helps to frame it. So there's a very strong dissent in the first opinion framing it. There's a petition for rehearing. That's what FERC is acting against or pursuant to. That is the frame. There's a petition for rehearing. You're being very formalistic in a very strange way. I have the faintest idea if we send it back, what are we supposed to say? Add some words and say, gee, we made a mistake. They have a petition for rehearing, which they're responding to, which says you made a mistake, and then their finding is solely relying on the solution-based DFAX method to allocate the blah, blah, blah, that address stability, erase issues, does not allocate the cost of such transmission projects in such a manner, et cetera, et cetera. They made that finding as against the, in response to a petition for rehearing, which said the first disposition was wrong. And they are now saying it was wrong. They agree. They made the critical finding in response to a petition for rehearing. Now, if they had just walked in and there was no petition for rehearing and they just said, oh, incidentally, we're going to have a new opinion, and there's no frame or no framework whatsoever, and they just issued something, maybe I can understand you, but you really are not being fair and characterizing. There was a lot of fighting. I mean, you're taking it so out of context. It's not fair. There was a huge battle. The overarching agencies weighing in, they have their white paper, both sides were fighting like crazy for two years. Everyone disagreed and was strong concerns about what was going on. And then there's a petition for rehearing and FERC responds to it. Wait a minute, something happened here. I'm sorry. That was my computer. And so that's why I want you to understand why I'm not getting it. I think you're creating something that's just a fiction. If there was no petition for rehearing, then I, as a judge, I would say, yeah, that's strange. I know how an agency or a court could get out of that bind, but there was one here. There's a dissent and then a petition for rehearing, frames the issue, and then FERC makes its finding. Okay. I think the problem, the thing that I think is missing here in the discussion is that, and I think the reason that the initial finding of substantial benefits from the project, which was never expressly addressed or overturned is- It is. It is. Counsel, wait a minute. That is just wrong. FERC made a finding in its new order, which says, here is what we are concluding on the same record, which is absolutely inconsistent with what they initially said. They're clearly saying they were wrong initially. They said in the second opinion, what we said before is wrong. It doesn't work in this context. Yes, but I think the point I'm trying to make is that I don't think FERC's explanation works, because FERC was not free on rehearing to simply say, we have a new method that we think might be better than the first method. They were not- That's not all they're saying. They're saying what we did initially was wrong. Right. That's the key point. There could be a fight over what they replace it with, but I don't understand you challenging that. They clearly said what was initially done was wrong. Yeah. I just looked at the finding. The finding is there. Yes, but I don't think the finding is what they needed under their section 206, Vern, because I was saying under 206, they cannot simply find what we have a special circumstance here where we think this new approach would be better and that the first one is not right. They have to find specifically that the benefits are not commensurate. Can I ask this question on that? From the project, but they found that there were significant benefits and they didn't reverse that finding. I think the problem- Judge Srinivasan has a question. Excuse me. I'm sorry. Maybe my voice isn't coming through, but can I ask this question? Are you able to hear me? Yes, I am. Okay. Thanks. To me, the way to understand the benefits question is this, that the original order in 2016 was framed around a particular set of assumptions about what the relevant benefits were because the relevant benefits had to do with flow. Then, but in 2018, there's a recognition that, wait, we're just conceptualizing this erroneously because in the stability-related context, there's a different kind of benefits that come to the fore and the benefits that come to the fore are the stability-related benefits. That's in some places, but at least in paragraph 40 on JA-92. When you think about the benefits as being in the context of a stability-related problem that is remedied with stability-related benefits, then yeah, they might have talked about substantial benefits before, but it was a different framework for understanding what the relevant benefits were. That seems like that addresses the substantial benefits description because it was substantial benefits of a kind that were originally viewed to be the relevant field of benefits. Now, we're talking about a different kind of benefits that we now understand is what's more apposite when it's a stability-related problem. Therefore, I don't know that you have to explicitly say, when we were talking about substantial benefits before, it was a different frame of benefits. Now, we understand that there's stability-related benefits. As stability-related benefits, it's not commensurate anymore to assign it all to Delmarva. Well, I think you're right that they said there could be a different way of looking, or there is a different way of looking at the benefits when you're in a stability context. If you go back and look, and I think you're suggesting that we have to infer what was going on because they never say, here's the finding we made, and here's why we're contradicting that finding. I guess I was more troubled by that than certainly seems Judge Edwards is because he was able to discern the path, I guess, as it goes. It seems to me that that's more than a technical or formalistic problem in this case because we, as the transmission owners, have the right to present this as long as it passes muster under the cost causation test. FERC's finding of these substantial benefits, because no one is denying this energy goes to Delaware and Maryland, they get the benefit of it. This is nothing at all like the ICC case where Illinois is paying for something that's in New Jersey or out in the east part of the country. This is going right there. So they made that finding of benefits, and that finding of benefits, if it is enough to meet the commensurate benefits test, means that they have to accept our allocation proposal. In order to overturn it, they have to find that it's not commensurate. And they did, as I understand it, and I agree, they did find it was not commensurate, but the problem is in finding it wasn't commensurate. They didn't deal with their prior finding that there were substantial benefits here. And there was a lot of record evidence about the substantial benefits here, that Delmarva is an importer of power, that it had transmission constraints, that most of its energy comes from connections to the north. All those findings were in there that this is a benefit. And so the problem is, I think, not that they didn't make a finding that this new stability deviation method might not be proper. It's not enough for them to find that the new one has to be proper. They have to find the old one is improper. They did find the old one was improper, as Judge Edwards notes, but they didn't take into account the record. They didn't take into account their prior findings and all of the evidence that supported those prior findings, that there were substantial benefits to Delmarva. Yes, maybe in a stability context, there might be benefits to other people. And if you look, it's not in the commission's order, but if you go root around in the technical transcript that Ms. Rylander cited too, they point to PJM and PJM talks about how these stability violations are different. And they say, yeah, maybe you could find an additional beneficiary. Maybe this doesn't capture all the beneficiaries. But the point for our purposes is, solution-based defects does capture the user beneficiaries, and that's enough. And it's particularly enough, especially enough in the context of 4-1000. Excuse me. I think we understand that part of your argument. Let me make sure my colleagues don't have further questions for you at this point, because you mentioned Ms. Rylander. Why don't we give her a chance to make her argument, and we'll give you a bit of time for rebuttal, unless my colleagues have further questions for you at this time. Okay, thank you, Mr. Longstreth. Let's hear from FERC counsel, Ms. Rylander. Good morning. May it please the court, Elizabeth Rylander for the commission. To briefly recap what we've heard already, it is correct to say that when the commission grants rehearing, what it's trying to do is get to the correct answer. And in this case, the two very thorough orders the commission issued in 2018 and 2019 go to extensive effort to grapple with the record, to look at what the commission had not discussed in 2016, and to arrive at the correct answer that the proper way to measure benefits of a stability project is not to follow the flow of electrons to whatever terminus PJM, as the system operator, has chosen for the new project. Could I ask you, the commission says clearly in paragraphs 66 and 67 of the 2018 order that, you know, disagrees with these other arguments. It's taking the position. Where did it respond to the concern addressed about order 1000, that the benefits of knowing what the rules of the road are in advance captures so many important things. And I'm looking at what the commission has said, specifically, here I'm looking at the 2018 order, sort of starting around, you know, paragraph 64, going through, let's see 69. But I don't see that it just until 74, it says commenters raise concerns that the solution based method may encourage selection of projects based on voltage or cost rather than efficiency or cost effectiveness as directed by order 1000. And the commission, this is paragraph 74 simply says there is no evidence here. Is that its complete response to the concern about order 1000? I'm sorry, your honor, I'm having trouble finding the place in the order that you're looking. Paragraph JA 544. I'm sorry. Paragraph 74. Mm-hmm. Yep, the commission did, with regard to order 1000, the commission did not make a finding that the selection of project was done incorrectly. And what they're saying here is there's no evidence to support the contention that the project selection was incorrect. So it's hard to know exactly what the commission was thinking there. There is evidence in the record that PJM had 26 options to choose from in selecting this project. And as quoted in a later order, that PJM chose what it viewed as the least risk and a relatively cost effective option for solving the stability problem. What order 1000 requires is that, is not that PJM select the least expensive or the easiest project to build, but something that is, but something that will improve efficiency and will have benefits for the entire region. All right, but, and I see it also, I even highlighted it in but it, does it ever address the fact, not that it is suggesting that it's change of method in 2018 isn't correct in its view, but that it has no concern that this change will affected contrary to the predictability issue, not issue, but principle on which order 1000 is founded. I know in your brief, you say order 1000 leaves open the method, just has some principles. All right, but I didn't see anything in the commission's decision itself about that. And I just wanted to be clear because you're probably more familiar with this than I. The commission speaks broadly in the 2018 order about the importance of matching costs to benefits and certainly order 1000's first regional cost allocation principle is that costs and benefits be allocated in a way that is roughly commensurate with one another. If I'm understanding your honor's concern correctly, it's that the commission arrived at this finding following the selection of project and following what was intended to be an ex-ante allocation of costs. And the submission of the proposed tariff. So yes, the entities have proceeded on the basis of the 2016 order. Now the commission is reconsidering and saying, we have to change our mind. Are the concerns that are addressed in my question matters that would come up later in commission proceedings, namely when it reconsiders the submission. And I just want to understand it in the whole idea was, I get to know what the rules of the road are in advance. So I proceed on that basis. And I submit this proposal to the commission on tariffs, etc. Then the commission says, we have decided for excellent reasons that we want to adopt a different framework. And that framework makes much more sense. And it's called the statutory directive. And is this going to apply? Am I just caught? That's what I want to understand. Do I get some relief further down the road? Let me, can I add on to that? I don't think there's any reliance interest that they can argue here. I was asking counsel for FERC to tell me that. Yeah, no, I was just adding my question to yours, Judy. So she would ask, answer it within the frame, but I'll let her answer yours first. Go ahead. Because this was raised by, before the commission. And I just didn't see it ever answered it. That's all. All right. So again, Your Honor, the commission's overarching responsibility is to ensure that rates are just and reasonable. And both these orders and order 1000 share that goal. The departure from the rate approved in the 1000 compliance filing is certainly not what the parties were necessarily expecting. But we're still dealing with the same project. And in there was a parallel case under federal power act section 205 that allocated the dollars specifically. So while the cost allocation in an ex ante was spelled out ex ante in terms of this is what you can reasonably expect in terms of boiling it down to dollars that requires a separate commission approval on a separate track. And both those proceedings leave room as here for the commission to take to look at the overall picture and say, you know, this doesn't work. And which is also consistent with a statute and also in furthering the goal of just and reasonable rates. This is not, I would say this is not necessarily an optimal way to establish expectations and to allocate costs under the broad theories established in order 1000 and the compliance filings, but in the service of the statute, that's what was required here. Yes, we're asking about reliance. Yeah, they're like, my make sure I understand my sense is no one can reasonably claim but wait, I had a reliance interest and I did something I wouldn't have done. Had I known we would end up in this place. That's not what I'm understanding. My understanding is that the commission is simply said, they made the finding here that opposing counsel has been arguing about that the benefits were not commensurate with with costs, which is order 1000. Yes. And, and, and that's the foundation for the new order. And that answers any concern that opposing counsel is raised if if the commission is correct, and they are correct. They are saying in this frame, we missed it. It's not that there are no benefits. There are benefits, and they may even be more than a little bit, but rule order 1000 says benefits have to be commensurate with costs. And they fixed it. They said in this framed situation, we were wrong in suggesting that and I want to make sure I'm correct. I don't see any viable reliance interests where anyone would say, Oh, wait, you can't do that because I did x and I wouldn't have done x. The project's a good project that was going to go ahead. And then you have to figure out how you're going to allocate the cost. Am I understanding correctly? Yes, Your Honor, you are. And I would, I would add that it is I view it as consistent with order 1000 to get that cost allocation, right? Even if that has to be even if that has to be done as it was here, which was in a way that was somewhat different from what the parties would have thought at the time the project was chosen. I would also add, you know, again, and this is, this is clear in the record, PJM, which is the independent transmission operator chose the project. It's not that the it is not that the parties are choosing it and then allocating the costs among themselves. This was done independently and without PJM has does not have financial interest in that's what I, that's part of what I was trying to ask on the reliance claim. It's a PJM makes the determination and we need this project. Then you, then you go through the fight over benefits and costs. Yes. Okay. I understand. Thank you. Okay. Okay. And to finish following up on Mr. Long's first argument, I'd like to clarify that FERC did not just swap in a new rate in these 2018 and 2019 rehearing orders. The 2018 order found that the initial cost allocation was not effective in a stability setting and that further proceedings were necessary to identify a replacement rate. And as the court and those further proceedings were held in the form of a paper hearing. And as the court has already observed, the outcome of the paper hearing and the resolution of the rate issue are not at, are not at issue in this case because the petitioners didn't seek a hearing of them before the commission. All that the court needs to look at here is the commission's decision that because of the definition of benefits that was used in order 1000 compliance and used in this case, the original order one, the original flow-based method was not appropriate to a further questions. If the court has more, I don't, I don't sure. Okay. Thank you. Miss rounder, Mr. Longstreet, you know, you have three minutes for your rebuttal. Uh, thank you very much, your honors. Um, and I I'd like to go to the points, um, about order 1000, um, because I think that really is, uh, important to where we are here. Um, again, uh, order 1000 was designed, um, to set an ex ante rule that people would, that was easily administrable, easily unknown to the parties and that would avoid litigation over cost allocation by people who are unhappy with the decision. Um, and so to the extent there's a reliance interest, um, I think much of what judge Edward says is correct, but the rule in place, or we knew this rule was going to apply and basically even out over projects based on the, uh, fact that we could tell who the users were and that's how it'd be applied. Um, and the, the thing that FERC never addressed, the arguments that FERC never addressed were how this is consistent with that ex ante portion of, uh, order 1000. Yes, it is true that under order 1000, the cost, the costs have to be commensurate with the benefits, but that gets back to the point, um, that I was making before, which is there's no question there are benefits going to Delmarva and they could, as judge Edwards noted, even be more than the sum benefits that they've been trying to minimize it as being. If in fact there are substantial benefits, then the solution based defects does meet the commensurate benefit test and FERC's finding to contrary because it did not consider that fact and did not consider its prior finding is just not supported. Yes, they made the finding, but it was not proper for them to make that finding without considering and specifically addressing their prior finding that there were substantial benefits. And the reason that's important is because if in fact the solution based defects is close enough here, we as the transmission owners had the right to rely on the fact that that was the rule and that was going to be applied in all cases. And we were not going to be faced with a decision where somebody unhappy with that decision after the fact was going to be able to come in and overturn the decision. In other words, if you have a rule that's going to, um, you'll work out over time and these are benefits over time, you know, the other advantage, this, the whole idea also of ex ante was, and this was in the compliance order, we're not looking at the violation. We're not looking at, you know, this is a stability violation. And this is the reason that we're putting in the project. We're looking at who is using the project and who is using the project over time and over time that will work out. And the transmission owners recognize that where it will not work out is if the commission comes in after the fact and says, well, in this particular case, we've got one, we might like a little better. We're not expressly finding that this isn't, uh, that the first one wasn't, um, permissible, but we're going to change it. That upsets the whole system and it upsets the whole idea of an ex ante system. And that's the one thing that I think is good. Roger's note, Burke never dealt with that argument for never explained why it's ruling wasn't going to upset this whole ex ante system that they had put in place. Thank you. All right. Thank you, counsel. We'll take this case under submission.
judges: Srinivasan, Rogers, Edwards